**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**STATESBORO DIVISION**

EDWARD RESHAWN JENKINS,    )
                          )
   Plaintiff,      )
                          )
v.                        )   CV625-030
                          )
NOEL BROWN, *et al.*,      )
                          )
   Defendants.     )

## <u>ORDER AND REPORT AND RECOMMENDATION</u>

After screening *pro se* plaintiff Edward Reshawn Jenkins' Amended Complaint, the Court approved his Religious Land Use and Institutionalized Persons Act ("RLUIPA"), First Amendment, and retaliation claims for service. *See* doc. 14. Defendants appeared and moved to dismiss. Doc. 17. They also moved to stay discovery. Doc. 18. Jenkins never responded to the Motion to Stay. *See generally* docket. He filed a Motion to Amend, doc. 19, in response to the Motion to Dismiss. Defendants replied in support of their Motion. Doc. 21. Jenkins moved for court-appointed counsel, doc. 22, and sur-replied in opposition to the Motion to Dismiss, doc. 25.

1

For the reasons explained below, Defendants' Motion to Dismiss should be **GRANTED**, based on Jenkins' failure to exhaust available administrative remedies, and the remaining arguments in support of dismissal should be **DISMISSED** as moot.  Doc. 17.  Since the Motion to Dismiss correctly argues that Jenkins' Amended Complaint should be dismissed for his failure to exhaust administrative remedies, as discussed below, the Motion to Stay is **DISMISSED** as moot.  Doc. 18. Additionally, for the reasons explained below, Jenkins' Motions to Appoint Counsel are **DENIED**.  Docs. 19 & 22.  His Motion to Amend should be **DENIED** as futile.  Doc. 19.

The Court first addresses Jenkins' requests for appointed counsel. *See* doc. 19 at 7, doc. 22; *see also* doc. 25 at 7-8.  Jenkins has no constitutional right to counsel in this civil case. *Wright v. Langford*, 562 F. App'x 769, 777 (11th Cir. 2014) (citing *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999)).  "Although a court may, pursuant to 28 U.S.C. § 1915(e)(1), appoint counsel for an indigent plaintiff, it has broad discretion in making this decision, and should appoint counsel only in exceptional circumstances."  *Id.* (citing *Bass*, 170 F.3d at 1320). Appointment of counsel in a civil case is a "privilege that is justified only

by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." *Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990) (citing *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987), and *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985)). "[T]his Court has repeatedly found that prisoners do not receive special consideration [for appointed counsel] notwithstanding the challenges of litigation in a case while incarcerated." *Holzclaw v. Milton*, 2019 WL 1474398, at * 1 (S.D. Ga. Apr. 3, 2019) (internal quotation marks and citation omitted); *see also Bell v. Lamb*, 2021 WL 1954739, at * 3 (S.D. Ga. Mar. 30, 2021). General lack of education, including legal education, is also not a sufficient basis to require appointment of counsel. *See, e.g., Brown v. Wilcher*, 2021 WL 411508, at *1 (S.D. Ga. Feb. 5, 2021).

The Eleventh Circuit has explained that "the key" to assessing whether counsel should be appointed "is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court. Where the facts and issues are simple, he or she usually will not need such help." *McDaniels v. Lee*, 405 F. App'x 456, 457 (11th Cir. 2010) (quoting *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993)). Jenkins'

3

pleadings are clear and cogent, and there is no indication that he has any difficulty presenting "the essential merits" of his claims to the Court. Moreover, as discussed below, this case should be dismissed as Jenkins failed to exhaust administrative remedies, as required under the Prison Litigation Reform Act. To the extent that his request for counsel relies on asserted difficulties in developing the factual record or trying this case, those arguments are moot, given his failure to exhaust. *See, e.g.,* doc. 19 at 1-2. There is, therefore, no indication of any "exceptional circumstance" that warrants appointment of counsel. *Fowler*, 899 F.2d at 1096. Jenkins' Motions are, therefore, **DENIED**. Doc. 19, in part, doc. 22; *see also* doc. 25 at 7-8.

The document identified by the Clerk as a "Motion to Amend," is, in fact, somewhat ambiguous. It is titled "Motion to Proceed," and the substance of the document disputes Defendants' arguments that Jenkins failed to exhaust available administrative remedies concerning the allegations in his Amended Complaint. *See generally* doc. 19. The allegations concerning exhaustion are discussed below. To the extent there is any discernable request to amend his pleading in the document, it concerns responses to substantive arguments in the Motion to Dismiss.

*See id.* at 3-4.  Since, as explained below, Jenkins has failed to exhaust his administrative remedies, any amendment to the substance of his unexhausted claims would be moot.  If the document is correctly construed as a Motion to Amend, therefore, it should be **DENIED** as futile.[1]  Doc. 19, in part.  *See, e.g., Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) ("A proposed amendment may be denied for futility when the complaint as amended would still be properly dismissed." (internal quotation marks and citation omitted)).

Having resolved Jenkins' Motions, the Court proceeds to address Defendants' Motions to Dismiss.  Doc. 17.  The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion of available remedies is mandatory; "[a]nd that mandatory language means a court may not excuse a failure to exhaust, even to take [special] circumstances into

---

[1] In addition to their exhaustion arguments, Defendants assert substantive defects in Plaintiff's claims.  *See* doc. 17 at 11-16.  Because the futility of the, charitably, ambiguous request to amend, doc. 19 at 3-4, is less clear as to those arguments, and given that the Court concludes that the claims are unexhausted, it declines to reach Defendants' alternative substantive arguments.

5

account." *Ross v. Blake*, 578 U.S. 632, 639 (2016). The statute's plain language "means that until such administrative remedies as are available are exhausted, a prisoner is precluded from filing suit in federal court." *Leal v. Georgia Dept. of Corrs.*, 254 F.3d 1276, 1279 (11th Cir. 2001) (internal quotation marks and citation omitted). "To exhaust administrative remedies in accordance with the PLRA, prisoners must *properly* take each step within the administrative process." *Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008) (emphasis added) (internal quotation marks and citation omitted); *see also Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (holding "that proper exhaustion of administrative remedies is necessary," to satisfy the PLRA). "Where exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits [of the underlying claims] and the parties have sufficient opportunity to develop a record." *Bryant,* 530 F.3d at 1376.

When a defendant files a motion to dismiss based on a prisoner's failure to exhaust administrative remedies, the Court follows a two-step process. *See Turner v. Burnside*, 541 F.3d 1077, 1082-83 (11th Cir. 2008);

6

*see also, e.g., McGuire-Mollica v. Federal Bureau of Prisons*, 146 F.4th 1308, 1313-14 (11th Cir. 2025).  As the Eleventh Circuit has explained:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true.  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. [Cit.] . . . If the complaint is not subject to dismissal at the first step, . . ., the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. [Cit.]  The defendants bear the burden of proving plaintiff has failed to exhaust his administrative remedies.

*Turner*, 541, F.3d at 1082 (citations omitted).  "[O]nce [the defendant's] burden has been met, the burden of going forward shifts to the plaintiff, who . . . must demonstrate that the grievance procedure was 'subjectively' and 'objectively' unavailable to him."  *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1356 (11th Cir. 2020); *see also, e.g., Harris v. Goodwin*, 2025 WL 2652082 at *2 (11th Cir. Sept. 16, 2025).

There is no dispute that grievance procedures are, at least formally, available at Bulloch County Jail and cover the issues raised in Jenkins' Complaint.[2]  *See, e.g.,* doc. 17 at 2, doc. 25 at 2 (conceding that Defendants

---

[2]  Because, as discussed above, administrative exhaustion is properly treated as a matter in abatement, Jenkins' objection that the Motion to Dismiss "focuses primarily on extrinsic evidence and facts," and "asking the court not to consider," them, doc. 25 at 1 (capitalization corrected), is unavailing.

have shown that administrative remedies are generally available). Defendants explain that Jenkins had an "extensive grievance history," while he was incarcerated at Bulloch County Jail. Doc. 17 at 3. They identify six grievances related to the allegations in Plaintiff's Amended Complaint. *Id.* at 3-6. Defendants explain that, even assuming Jenkins appropriately filed grievances concerning his underlying allegations, he never properly appealed any of them. *Id.* at 10. Defendants' declarant, supported by a copy of the grievance procedure, makes clear that appeal is a necessary component. Doc. 17-1 at 2-3, 10. Jenkins' response is not entirely consistent. He first states that he was unaware of the procedures. Doc. 19 at 1-2. That contention is facially inconsistent with the fact that he filed multiple grievances. It is also belied by his contention, on the next page of his response, that he intended to file a grievance appeal. *Id.* at 2.

Defendant's reply points out that Plaintiff's response concedes, albeit implicitly, that they have borne their burden under *Turner*. *See* doc. 21 at 2-3. Thus, they address whether he has borne his burden to show that the procedure was subjectively and objectively unavailable. *Id.* *Geter* made clear that a formal administrative remedy was "unavailable"

in the relevant sense, in three circumstances: "(1) when the administrative procedure operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) where the administrative scheme is so opaque that it becomes incapable of use and no ordinary prisoner can discern or navigate it; and (3) when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." 974 F.3d at 1355 (quoting *Ross*, 578 U.S. at 643-44) (internal quotation marks and alterations omitted). As discussed below, Defendants' Reply persuasively argues, and Jenkins' sur-reply does not rebut, that he has not borne his burden to show that the grievance procedure was "subjectively and objectively unavailable." Defendants' Reply construes Jenkins' argument that the grievance procedure was unavailable as making three claims. Doc. 21 at 4-6. Jenkins' agrees that his argument "is indeed threefold." Doc. 25 at 2. The Court will, therefore, address each of the three arguments in the order that Defendants present them.

Defendants construe Plaintiff's objections to the operation of the grievance procedure as asserting, first, that it was unavailable as

9

"opaque." Doc. 21 at 4. Defendants point out that Jenkins' history of filing grievances shows that the procedure was not, in fact, "opaque," either objectively or subjectively. *Id.*; *see also Perez v. Kurian*, 2024 WL 2109305, at \*6 (E.D.N.Y. Mar. 30, 2024) (finding it "beyond dispute that [a prison] grievance process is sufficiently clear, especially to Plaintiff," where the plaintiff previously made use of the process). Plaintiff appears to concede that argument. Doc. 25 at 2 ("If Plaintiff did not know how to use [the] grievance system then he would not have filed [nine] grievances." (cleaned up)). He also contends that he, and allegedly other inmates, "could not locate the Grievance Procedure on [the Jail's] Kiosk System." Doc. 25 at 3. However, Jenkins does not—and indeed could not—contend that he was unaware of the grievance process, including appeals. He successfully filed multiple grievances during his incarceration and acknowledged that the system indicated the possibility of appeals, even if he contends that it malfunctioned, as discussed below. In similar circumstances, the United States District Court for the Middle District of Georgia has found a prisoner plaintiff's use of the grievance system was sufficient evidence of his knowledge of it. *See Woodard v. Sauls*, 2020 WL 6498656, at \*5 (M.D. Ga. May 4, 2020). He has,

therefore, not plausibly shown that the system was unavailable as "opaque."

The second argument Defendants identify is Plaintiff's contention that there is a "systemic error," in the electronic kiosk system that prevented him from properly appealing any of his grievances. Doc. 21 at 4-5; *see also* doc. 19 at 2 (asserting that "the Jail kiosk system as does not register appeals with grievance under format as Plaintiff was met with same problem" (unedited)). Defendants note that Jenkins filed separate grievances, close in time to the responses to his original grievances. Doc. 21 at 4-5; doc. 17-1 at 38-39. Defendants point out that, to the extent that there was an "error" in the electronic system, even if the separate grievances were intended as appeals, they remain procedurally deficient. Jenkins' sur-reply concedes that, in the electronic system, he was "faced with Appeal option," but when selected, the system prompted him to file a separate grievance. Doc. 25 at 3. Such technical failures in the grievance system do not render the procedure unavailable. *Pritchett v. Cummings,* 2018 WL 11244837, at *3 (S.D. Fla. Sept. 17, 2018) (rejecting argument that "attempt to submit an appeal was stymied by a technical glitch in the system"). Moreover, Jenkins does not address Defendants'

observation that, even if those separate grievances were construed as appeals, they remained procedurally deficient. *See* doc. 25 at 3. The Court assumes that Plaintiff's allegation that the electronic system would not accept an "appeal" is true,[3] *Turner*, 541, F.3d at 1082, but, even construing the follow-up grievances as "appeals," they remain procedurally deficient. *See* doc. 17-1 at 4-6. Such seriatim grievances do not excuse a prisoner's failure to properly appeal the disposition of his grievances, for exhaustion purposes. *See, e.g., Robinson v. Wilson*, 2012 WL 3264874, at *4 (D.S.C. Aug. 9, 2012); *Yisrael v. Gil*, 2010 WL 11506991, at *8 (S.D. Fla. Nov. 30, 2010) (finding prisoner's submission not a "properly instituted" appeal where prisoner completed improper section of a form instituting new grievance). Jenkins' allegations that the electronic grievance system malfunctioned does not, therefore, show that it was unavailable.

---

[3] Plaintiff's sur-reply points to "[i]nmate signatures[ ] that supported the fact they also encountered the same problem." Doc. 25 at 2. That appears to be a reference to a page attached to Jenkins' response. Doc. 19 at 6. That page includes a list of signatures with, what appears to be a notation at the top which reads, unedited and in full: "Inmates that have Encountered same jail kiosk systematical error and can testify that 3-5-20 Inmate Grievance Procedure are not made readily available for Inmates to see or access . . . ." *Id.* Given the ambiguities in that document, it is unclear what evidentiary value it might have in the context of the *Turner* analysis. However, because the Court assumes Plaintiff's account of the "error" in the kiosk system is true, the significance of that document is moot.

The third argument that Defendants identify is Plaintiff's somewhat vague and conclusory contention that the grievance procedure was futile. *See* doc. 21 at 5-6. Jenkins' sur-reply does not directly address any contention that the grievance procedure was futile, but does point to his "request" that "legal mail addressed to him from District Courts or any government entity . . . be opened in his presence." Doc. 25 at 4. That request, he says, "was ignored." *Id.* However, he does not explain why a rejection of a particular request—the legitimacy of which is, at best, dubious[4]—supports the conclusion that the grievance process, as a whole, "operates as a simple dead end—with officers unable or *consistently* unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643 (emphasis added). The additional allegations, which suggest claims for First Amendment retaliation for filing the instant lawsuit and unconstitutional conditions of confinement, which Jenkins suggests contributed to his "feel[ing] as though nothing would be [d]one," as he

---

[4] The basis for Jenkins' request appears to be his misapprehension that mail received from this Court is "legal mail." In this Circuit, "legal mail," which must be opened in a prisoners' presence is limited to "attorney mail"; that is, communications with an attorney who represents the prisoner related to any ongoing or contemplated legal proceeding, whether civil or criminal. *See, e.g., Zamaro v. Moonga*, 2009 WL 5197851, at *2 (E.D. Cal. Dec. 22, 2009) ("[U]nder federal law, filings in [an] action, be they court orders or documents filed by [parties], are a matter of public record and are not confidential legal mail." (citation omitted)).

concedes, bear, at most, on the subjective availability of the grievance process. *See* doc. 25 at 7 (citing *Priester v. Rich*, 457 F. Supp. 2d 1369, 1375 (S.D. Ga. 2006)). Jenkins' third argument, therefore, fails to show that the grievance procedure was futile.

Even crediting Jenkins' version of the facts, therefore, it is clear that whatever attempt he made to exhaust his administrative remedies was procedurally inadequate. "Procedurally defective grievances or appeals are not adequate to exhaust." *Abram v. Leu*, 848 F. App'x 868, 869 (11th Cir. 2021). Defendants' Motion to Dismiss should be **GRANTED, in part**, because Jenkins failed to exhaust available administrative remedies. Doc. 17, in part. To the extent that Defendants' Motion asserts that Jenkins' Amended Complaint fails on other grounds, it is **DISMISSED, in part**, as moot. Doc. 17, in part. Jenkins' Amended Complaint, doc. 13, should, therefore, be **DISMISSED without prejudice**. *See, e.g., Brown v. Georgia Dept. of Corrs.*, 2023 WL 5529686, at \*1 (11th Cir. Aug. 28, 2023) (affirming dismissal without prejudice for failure to exhaust administrative remedies). His Motion to Amend should be **DENIED**. Doc. 19. His Motions to Appoint Counsel are **DENIED**. Docs. 19 & 22.

This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*,

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED**, this 26th day of February, 2026.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA